UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re: Katherine Ruth Hamilton,   No. 7-09-12647 JR

Debtor.

**<u>MEMORANDUM OPINION</u>**

This matter is before the Court on Debtor's Amended Motion to Avoid Judicial Lien of Roy McKinney ("Motion to Avoid Lien")(Docket No. 43), Debtor's Motions to Extend Time to File Amendments to Claim of Exemption ("Motion to Extend")(Docket Nos. 51 and 52), and Creditor Roy McKinney's Objection to Debtor's Claim of Amended Exemptions (Docket No. 57).

The Court held an evidentiary hearing on November 16, 2010. The Debtor, Katherine, Hamilton, appeared through counsel, R. Trey Arvizu. Roy McKinney appeared through counsel Tim J. O'Quinn. At the conclusion of the hearing, the Court granted the Motion to Extend, allowing Ms. Hamilton to amend her claim of exemptions. The Court took the remaining matters under advisement.

Ms. Hamilton asserts that the judicial lien held by Mr. McKinney and recorded on December 4, 2008 impairs her homestead exemption and seeks to avoid the lien pursuant to 11 U.S.C. §522(f)(1)(A). Mr. McKinney contends that the Ms. Hamilton's claim of homestead should be disallowed and the Motion to Avoid Lien denied.

The Court having considered the evidence, argument of counsel, and applicable statutory and case law, will overrule the objection to the amended claims of exemption, and will allow the homestead exemption. The Court will grant the Motion to Avoid Lien on the ground that the judicial lien impairs the Debtor's homestead exemption.

## PROCEDURAL HISTORY AND FACTS

In 2001 Ms. Hamilton acquired certain real property located at 5309 N. Prince, Clovis, New Mexico (the "Prince Property" or "Property"). Her father, James Cage Allen, loaned her $67,000 to purchase the Property. The loan was unsecured. There is a metal building on the Property built for use as commercial warehouse. The exterior dimensions of the building are 60' x 60'. There is no evidence before the Court that Ms. Hamilton used the Property prior to 2006. Since 2006 or 2007, Ms. Hamilton has used the Property for the sale of fireworks for an approximate 2-week period each year during the Fourth of July holiday season.

On November 20, 2008, Mr. McKinney obtained a judgment against Ms. Hamilton in the amount of $52,518.44 entered in Cause #D-0905-CV-02007-00133, Ninth Judicial District Court, Curry County, New Mexico entitled *Roy A. McKinney and Brenda J. McKinney v. Katherine R. Hamilton.* Shortly thereafter, on November 20, 2008, Ms. Hamilton executed a Quitclaim Deed transferring the Prince Property to her father. On December 4, 2008 Mr. McKinney recorded a Transcript of Judgment against Ms. Hamilton in Curry County, New Mexico in the amount of $52,518.44, which created a judicial lien against the Prince Property. The Quitclaim Deed transferring the Prince Property to Mr. Allen was recorded on December 16, 2008.

Ms. Hamilton filed her voluntary petition under Chapter 7 of the Bankruptcy Code on June 18, 2009 (the "Petition Date"), thereby commencing this bankruptcy case. On the Petition Date, Ms. Hamilton filed her schedules of assets and liabilities ("Schedules") and her Statement of Financial Affairs. Schedule A listed the Prince Property. Ms. Hamilton valued the Prince Property at $100,000. Schedule C included a claim of exemption for the Prince Property in the

amount of $60,000.00 under N.M.S.A. 1978, §42-10-9. Schedule D reflected Mr. McKinney's judgment lien against the Prince Property in the amount of the recorded transcript of judgment.

On June 19, 2009, Ms. Hamilton filed a Motion to Avoid Lien in which she sought to avoid Mr. McKinney's judicial lien against the Prince Property on the ground that the lien impaired her homestead exemption. Mr. McKinney objected to the claim of homestead exemption on the ground that the Prince Property is a commercial warehouse, not a dwelling house. An appraisal Ms. Hamilton procured after the filing of the bankruptcy case reflected an estimated market value of the Prince Property of $55,000.00 as of September 15, 2009.

On April 19, 2010, Ms. Hamilton retained new counsel in her chapter 7 case in her original counsel. On July 9, 2010 her new counsel amended her schedules to reflect a value for the Prince Property of $55,000.00 based on a post-petition appraisal, to elect the exemption scheme set forth in 11 U.S.C. § 522(d), and to claim an exemption against the Prince Property under 11 U.S.C. § 522(d)(5) in the amount of $2,481.56[1]. On July 9, 2009, Ms. Hamilton also filed an amended motion under 11 U.S.C. § 522(f) to avoid the judicial lien held by Mr. McKinney on the ground that it impaired her exemption against the Prince Property claimed under 11 U.S.C. § 522(d)(5). Mr. McKinney objected.

At a status conference held on September 20, 2010 on the amended motion to avoid judicial lien Ms. Hamilton's new counsel stated in support of his theory of lien avoidance that he understood there was an unscheduled first priority consensual lien against the Prince Property but needed a title report to confirm it before correcting the Schedules. He further stated that the existence of the consensual lien made litigation over allowance of a homestead exemption unnecessary. Counsel for Mr. McKinney countered that he had a title report on the Property

---

[1] Section 522(d)(5), 11 U.S.C. § 522(d)(5), permits a debtor to an interest in any property up to a specified dollar limit.

showing no such lien. The order resulting from the status conference entered September 23, 2010 provided that Mr. McKinney would furnish a copy of the title report on the Property to the Ms. Hamilton's counsel, and fixed a deadline for Ms. Hamilton to file a further amendment to her claim of exemptions subject to the right of Mr. McKinney to object. On October 8, 2010, Ms. Hamilton filed a second amended Schedule C by which she elected the exemption scheme under New Mexico law and claimed the $60,000 New Mexico homestead exemption. Mr. McKinney objected to the second amendment of her claim of exemptions.

After the status conference, on September 30, 2010 and October 4, 2010, Ms. Hamilton filed Motions to Extend Time to File Amendments to Claim of Exemptions. On October 8, 2010 she filed an Amended Schedule C claiming exemptions under New Mexico law, including an exemption in the Prince Property under the New Mexico homestead exemption statute set forth in N.M.S.A. 1978, §42-10-9. On November 8, 2011 Mr. McKinney filed his objection to Debtor's second amended claim of exemptions.

The Court makes the following additional findings of fact:

1. Ms. Hamilton did not act in bad faith by amending Schedule C on October 8, 2010, and there is no evidence of legal prejudice to Mr. McKinney in connection with the amendment.

2. Ms. Hamilton has resided at the Prince Property from the third week of May 2009 until at least the November 16, 2010 evidentiary hearing before this Court with the intent of establishing the Prince Property as her principal residence for the foreseeable future.

3. Ms. Hamilton uses the Prince Property primarily as her residence. The commercial use of the Prince Property is incidental to the residential use.

-4-

4.     Ms. Hamilton did not intend to hinder, delay, or defraud creditors by her pre-petition conveyance of the Prince Property to her father, by her obtaining a pre-petition reconveyance of the Prince Property to her in contemplation of bankruptcy, or by her establishing the Prince Property as her principal residence in contemplation of bankruptcy and with the intention of claiming a homestead exemption against the property.

## DISCUSSION

### A.  Claim of Homestead Exemption Pursuant to N.M.S.A. 1978, § 42-10-9.

The first issue before the Court is whether Ms. Hamilton's claim of homestead exemption should be allowed. A debtor's claim of exemptions in a bankruptcy case is governed by 11 U.S.C. § 522. Sections 522(b)(1), (2) and (3) permit individual debtors to elect either the exemptions available to them under applicable non-bankruptcy state or federal law, or the exemptions available under 11 U.S.C. § 522(d), unless applicable state law does not permit a debtor to claim exemptions under 11 U.S.C. § 522(d). New Mexico law does not preclude claims of exemptions under 11 U.S.C. § 522(d).[2] Ms. Hamilton elected to claim exemptions under New Mexico law. The party objecting to the claim of exemption bears the burden of proving the exemption should be disallowed. *See* Rule 4003(c), Fed.R.Bankr.P.

Mr. McKinney asserts four grounds for disallowing Ms. Hamilton's claim of homestead exemption:  (1) Ms. Hamilton acted in bad faith in connection with amending her claim of exemptions and therefore the amendment should not be permitted; (2) Ms. Hamilton had not actually established the Prince Property as her residence on the Petition Date; (3) the structure situated on the Prince Property is a commercial warehouse, not a "dwelling house" as required by the New Mexico homestead exemption statute; and (4) Ms. Hamilton acted in fraud of

---

[2] *See* 11 U.S.C. § 522(b)(1) and (2); 4 Collier on Bankruptcy ¶ 522.01, n.2 (Alan N. Resnick and Henry J. Sommer, eds. 15th ed. rev. 2005) (listing those states that have opted out of the exemptions contained in § 522(d) and ¶ 522.02[1]).

creditors by transferring the Prince Property to her father shortly after Mr. McKinney obtained a judgment against her, and by obtaining a reconveyance of the Property and purporting to occupy it on the eve of bankruptcy for the purpose of claiming the homestead exemption. The Court will address each of these grounds separately.

Pursuant to 11 U.S.C. §521(a)(1)(B) and Rule 7001(b)(c), FedR.Bankr.P., debtors have a duty to file a complete and accurate schedule of their assets and liabilities.[3] Bankruptcy Rule 1009 provides that debtors may amend their schedules "as a matter of course at any time before the case is closed."[4] An amendment to a claim of exemption, however, may be denied if the amendment is made in bad faith or there is legal prejudice to creditors.[5] Mr. McKinney has not legal alleged prejudice. The Bankruptcy Code does not define bad faith.[6] Courts have, for example, found bad faith and denied amendments to claims of exemptions in cases where debtors intentionally concealed assets and attempted to claim the assets exempt after the concealment was discovered.[7]

The Court finds that Ms. Hamilton did not act in bad faith by amending her exemptions to claim a homestead exemption under New Mexico law, and therefore will permit her to amend.

---

[3] 11 U.S.C. §521(a)(1)(B) and Fed.R.Bankr.P. 7001(b)(c); *In re Ruiz*, 406 B.R. 897, 900-901(Bankr.E.D.Cal 2009).
[4] *Ruiz*, 406 B.R. at 901.
[5] See *Calder v. Job (In re Calder)*, 973 F.2d 862, 867 (10th Cir.1992) ("An amendment may be denied if there is bad faith by the debtor or prejudice to creditors"). *See also*, *In re Arnold*, 252 B.R. 778(9th Cir. BAP 2000)(Amendments to the exemption schedule may be disallowed if the debtor has acted in bad faith or if prejudice would result); *In re Shethi*, 389 B.R. 588, 597 (Bankr. N.D.Ill.2008)(citing *Doan v. Hudgins (In re Doan)*, 672 F.2d 831 (11th Cir.1982)); *In re Grogan*, 300 B.R. 804, 807(Bankr.D.Utah 2003)(where Court denied amendment to exempt proceeds in an asset debtors knowingly concealed and failed to disclose on initial schedules).
[6] *In re Ford*, 192 F.3d 1148,1156 (10th Cir. 2007)(citing *In re Vincent J. Fasano, Inc.,* 55 B.R. 409 (Bankr.N.D.N.Y.1985).
[7] *Grogan*, 300 B.R. at 807 (citing *Matter of Yonikus*, 996 F.2d 866, 868(7th Cir. 1993)("fraudulent concealment of an asset works as a forfeiture of exemption rights"); *Doan*, 672 F.2d at 833.("concealment of an asset will bar exemption of that asset"); *In re Miller*, 255 B.R. 221, 222 (Bankr.D.Neb.2000) ("concluding 'a debtor may not claim as exempt property intentionally omitted from schedules'"); *In re Park*, 246 B.R. 837, 840 (Bankr.E.D.Tex.2000) ("A debtor may not claim as exempt property which he knowingly concealed and failed to disclose to trustee which normally would be exempt had it been properly scheduled and claimed."); *In re St. Angelo*, 189 B.R. 24, 26(Bankr.D.R.I.1995)("Intentional concealment of estate property will bar the debtor from claiming such property as exempt, after it surfaces as an asset.")).

Ms. Hamilton obtained a new appraisal of the Prince Property about three months after she commenced her bankruptcy case, and amended her schedules about nine months later to reduce the scheduled value of the Prince Property from $100,000 to the $55,000 appraised value. There is no evidence that Ms. Hamilton knowingly or intentionally overvalued the Property in her schedules. Any economic incentive to misstate the value would be to undervalue the Property to facilitate exemption of the entire Property. Further, there is no evidence of bad faith on the part of Ms. Hamilton in delaying her filing of an amended schedule to reflect the lower value or in amending Schedule C twice. Her new bankruptcy counsel amended her schedules within three months of his retention to reflect the lower value of the Prince Property and to amend her claim of exemptions. He amended the claim of exemptions further after learning he was mistaken about the existence of a consensual lien against the Prince Property and that an exemption under 11 U.S.C. § 522(d)(5) would not protect Ms. Hamilton's interest in the Property.

2.  The Prince Property is the Debtor's Residence

Mr. McKinney asserts that Ms. Hamilton did not actually reside at the Prince Property on the Petition Date and had not established it as her residence. He maintains that the Prince Property is uninhabitable and that Ms. Hamilton staged the Property to make it appear as her residence.

In *In re Robinson*, 295 B.R. 147 (10th Cir. BAP 2003) the Tenth Circuit Bankruptcy Appellate Panel affirmed a bankruptcy court's denial of a homestead exemption under Oklahoma law. *Id.* at 149. The bankruptcy court concluded that the property in question was not the debtor's principal residence as of the commencement of the bankruptcy case. *Id*. The debtor spent her first night at the property two days before filing her bankruptcy case. *Id.* at 153. The bankruptcy court found the debtor's testimony regarding repairs she made to the property before

moving in not to be credible. *Id*. at 152. The bankruptcy court found further the debtor's testimony that she had lived at the property for several months before filing bankruptcy was refuted by surveillance videos and other evidence. *Id.* at 151. The Bankruptcy Appellate Panel determined that the "bankruptcy court correctly concluded that the determination of a debtor's intent to designate a homestead under Oklahoma law requires more than a 'snapshot' taken at the date of filing," and that under Oklahoma law a court may examine "a party's acts and conduct prior to actual occupancy to ascertain whether an intention to make the property one's principal residence is present" *Id.* at 154.

This Court agrees that it may consider a debtor's acts and conduct prior to and after actual occupancy to ascertain whether the debtor had established a property as her principal residence before commencing a bankruptcy case. The Court is convinced that Ms. Hamilton occupied the Prince Property approximately three weeks prior to the Petition Date with the intent to establish it as her principal residence for the foreseeable future, and since the third week of May 2009 has continued to reside at the Prince Property.

The evidence established that there is a 60' x 60' metal building on the Prince Property built as warehouse space. Ms. Hamilton acquired the Property in 2001 with funds borrowed from her father. Since 2006 or 2007, she has used the Property for an approximate 2-week period each year during the Fourth of July holiday season to sell fireworks. At least until May 2009, this was the sole use of the Property while Ms. Hamilton owned it except for her storing some personal items at the Property. There is no water service or gas service to the Property. The building on the Property has no heating or cooling system and little or no insulation. The bathrooms, which are closed off, are very dirty and are unusable. A camping trailer is located on the Property. Aaron McKinney, Mr. McKinney's son, testified that when he inspected the metal

building on the Prince Property after Ms. Hamilton commenced her chapter 7 case it was apparent that Ms. Hamilton had staged the Property to make it appear she lived there.

Ms. Hamilton testified that she and her boyfriend, Lance Cooms, moved into the Prince Property during the last week of May 2009, or about three weeks before she commenced her chapter 7 case, that they have resided there since that time, and that she intended at the time she moved in to establish the Prince Property as her residence and still intends to reside at the Prince Property for the indefinite future. The Court finds this testimony credible.

Prior to moving to the Prince Property, Ms. Hamilton did not have a place where she could regularly reside. She stayed with her mother and with her son-in-law, off and on. Ms. Hamilton, Mr. Cooms, and Ms. Hamilton's son-in-law, Paul Sanchez, all testified that Ms. Hamilton moved into the building on the Prince Property in May 2009 and has resided there since. Mr. Cooms testified that he and Ms. Hamilton reside at the Prince Property. Donna Bitner, the owner and operator of a campground six miles from the Property, testified that Ms. Hamilton and Mr. Cooms regularly purchase containers of water from her and use the campground facilities to takes showers. In May 2009, Ms. Hamilton's uncle, Claude Walters, lent Ms. Hamilton money to activate electric service at the Prince Property, and loaned her a portable generator. He also loaned her use of a camping trailer to place on the Property so she would have an operable bathroom facility. The camping trailer is located on the Property. The upstairs loft in the building on the Property has been converted to a bedroom. It has subflooring and carpet padding partially covered by Indian rugs, a bed with bedding, a night table with a small portable stereo, and a 55 gallon barrel used for heating by burning scrap wood. Downstairs there is a microwave oven, a small refrigerator and a toaster. Although improvements at the Prince Property are minimal, it provides Ms. Hamilton with a home.

### 3. The Structure on the Prince Property is a "Dwelling House" Within the Meaning of the New Mexico Homestead Exemption Statute.

Mr. McKinney also asserts that the metal building on the Prince Property is not a "dwelling house" within the meaning of the New Mexico homestead exemption statute because it is a commercial warehouse.

The New Mexico's homestead exemption, N.M.S.A. 1978, §42-10-9. That Section provides,

> Each person shall have exempt a homestead in a dwelling house and land occupied by the person or in a dwelling house occupied by the person although the dwelling is on land owned by another, provided that the dwelling is owned, leased or being purchased by the person claiming the exemption. Such a person has a homestead of sixty thousand dollars ($60,000) exempt from attachment, execution or foreclosure by a judgment creditor and from any proceeding of receivers or trustees in insolvency proceedings and from executors or administrators in probate.

The New Mexico statutes do not define "dwelling house" as used in the exemption statute. In *State v. Ervin*, 96 N.M. 366, 367, 630 P.2d 765, 766 (Ct. App. 1981), the New Mexico Court of Appeals observed:

> The common law definition of dwelling house holds that a building is not a dwelling before the first occupant has moved in; nor does it continue to be a dwelling after the last occupant has moved out with no intention of returning.

New Mexico case law interpreting "dwelling house" in the context of burglary cases cite to Uniform Criminal Jury Instruction 16.21, which defines, "a dwelling house as 'any structure, any part of which is customarily used as living quarters.'" [8] Black's Law Dictionary defines "dwelling house" as "[t]he house or other structure in which a person lives; a residence or abode."[9]

Ms. Hamilton's use of the Prince Property is mixed commercial and residential. The building was built as a commercial warehouse. Ms. Hamilton uses the Property both as her

---

[8] *State v. Lara*, 92 N.M. 274, 275, 587 P.2d 52, 53 (Ct. App. 1978). *See also State v. Ross,* 100 N.M. 48, 50, 665 P.2d 310, 314 (Ct. App. 1983)
[9] *Black's Law Dictionary* 524 (7th ed. 1999)

-10-
Case 09-12647-j7    Doc 63    Filed 03/18/11    Entered 03/18/11 12:06:56 Page 10 of 20

residence and for the sale of fireworks. Where there is mixed commercial and residential use of a property, courts generally allow the homestead exemption where residential use is primary and business use is incidental, and disallow the exemption where business use is primary and residential use is incidental.[10] However, courts applying these criteria have reached varying results.[11] If the applicable homestead exemption law is limited by use and the quantity of land but not by dollar amount, courts tend to be more restrictive in allowing the homestead exemption where there is mixed residential and commercial use. *In re Springmann*, 328 B.R. at 258-29.[12] New Mexico's homestead exemption is limited by the use of the property and dollar amount but not by the quantity of land. N.M.S.A. 1978, §42-10-9.

---

[10] *In re Springmann*, 328 B.R. 251, 256 (Bankr.D.Dist.Col. 2005)("where the place is primarily the home of the family, and some business is engaged in on the premises in an incidental way, the conduct of such a business does not deprive the owner of the right to his homestead claim"); *In re MacLeod*, 295 B.R. 1 (Bankr.D.Me.2003) (when there is mixed use, and the primary use is commercial, the exemption will not attach to the business property); *In re Jefferson*, 163 B.R. 204, 205-06 (Bankr.D.NM 1993 ("incidental quasi-commercial use of property… does not defeat the claim of exemption").

[11] *Compare In re Majewski*, 362 B.R. 67, 70 (Bankr. D. Conn. 2007 (the Court allowed a homestead exemption in the Debtor's half interest in a 3-unit residential property under Connecticut law); *In re Springmann*, 328 B.R. at 256 ( the debtor who used part of his basement as an office for business purposes was allowed a District of Columbia homestead exemption); *In re Shell*, 295 B.R. 129, 134 (Bankr. D. Alaska 2003) (the debtor who resided in one unit and rented the other 5 units was allowed a homestead exemption under Alaska law against the six-unit residential Property); *In re Carey*, 282 B.R. 118,120 (Bankr.D.Mass. 2002) (the debtor who resided in one unit and rented the other 2 units was allowed a homestead exemption under Massachusetts law against the three-unit residential Property); *In re Jefferson*, 163 B.R. 204, 205 (Bankr. D. NM. 1993)(the court overruled a creditor's objection to a homestead exemption where the debtor sought to exempt multiple contiguous lots); and *Wholesale Grocery Co. v. Johnson*, 114 Kan. 89, 216 P. 828, 829 (1923)(the homestead exemption allowed on two buildings located on adjoining city lots that shared common plumbing and electric wiring; one building was used as a residence and the other to operate a grocery store and to store person items in the basement) with *In re Klein*, 272 B.R. 807, 809(Bankr. M.D.Fla. 2002) (the Florida homestead exemption does not cover a detached guesthouse that is rented seasonally); *In re Shillingglaw*, 81 B.R. 910, 912 (Bankr. D.N.H. 1994) (the New Hampshire homestead exemption only applied to hotel rooms occupied by debtor); *In re Aliotta*, 68 B.R. 281, 282 (Bankr. M.D. Fla. 1986) (the debtors who resided in one unit and rented the other 3 units was allowed a homestead exemption under Florida law only for the unit they used as a residence); and *Anderson v. Shannon*, 146 Kan. 704, 73 P.2d 5, 6 (1937) (after considering whether the building was chiefly valuable for business purposes, mostly used for business purposes, and/or constructed for business or commercial purposes, the Court denied the Kansas homestead exemption to a widow who moved into and occupied 738 square feet of a 12,800 square foot commercial theater where her deceased husband formerly had his medical offices).

[12] Subject in some cases to certain limitations or qualifications, jurisdictions that do not limit the homestead exemption by dollar amount include District of Columbia, District of Columbia Code § 15- 501; Florida, Florida Constitution, Article 10 § 4; Iowa, Iowa Code Annot. §§ 561.2 and 561.16; Kansas, Kansas Constitution, Article 15 § 9 and Kansas Statutes, Annotated, § 60-2301, Iowa Code Annotated, §§ 561.2 and 561.16, Oklahoma, Oklahoma Statutes, Annot., §§1 and 2; and Texas, Texas Property Code, Annot., §§ 41.001 and 41.002 and Texas Constitution, Article 16 § 51. If a homestead exemption is claimed in a bankruptcy case, the Bankruptcy Code imposes a dollar limit on the homestead exemption in specified circumstances. 11 U.S.C. § 522(q).

This Court finds that Mr. McKinney has not satisfied his burden of showing that Ms. Hamilton's use of the Prince Property was not primarily residential and that the business use of the Property was not incidental to the residential use. The 3,600 square foot metal building situated on the Prince Property was designed and built for commercial warehouse use. However, there is no evidence before the Court that Ms. Hamilton used the Property between the time she acquired it in 2001 and when she moved into the Property in May of 2009 for any purpose other than the sale of fireworks for a 2-week period during Fourth of July holiday seasons and to store personal items. The Property is located in an unzoned area in the county where both residential and commercial properties are located. Since Ms. Hamilton moved into the Prince Property, she has used an upstairs loft in the building as a bedroom and a portion of the ground level as a kitchen and to store personal items, and has used part of the ground level to sell fireworks during the Fourth of July holiday season. The remainder of the ground level of the building has remained vacant. There is no evidence before the Court to support a finding that Ms. Hamilton intends to use the Prince Property as her residence only on a temporary basis or to put the Property to substantial commercial use in the foreseeable future.

Under these circumstances, and because New Mexico courts liberally construe exemption statutes to promote the purpose of the statutes, [13] the Court finds that Ms. Hamilton occupies a "dwelling house" on the Prince Property within the meaning of New Mexico's homestead exemption statute.

4. <u>Establishing a Homestead in Contemplation of Bankruptcy</u>

Mr. McKinney further argues that Ms. Hamilton acted in bad faith and in fraud of creditors with respect to her claim of a homestead exemption against the Prince Property, and

---

[13] *In re Portal* 132 NM 171, 172, 45 P.3d 891, 892 (2002); *Ruybalid v. Segura*, 107 N.M. 660, 666, 763 P.2d 369, 375 (Ct.App.1988); *Coppler & Mannick, P.C. v. Wakeland*, 138 N.M. 108,111, 117 P.3d 914, 917 (2005).

therefore her exemption should be denied. He asserts that after he obtained a judgment against Ms. Hamilton, she transferred the Prince Property to her father without consideration to shield the Property from his collection efforts.[14] He further asserts that in contemplation of bankruptcy and for the purpose of claiming a homestead exemption against the Prince Property, she purported to move into the Property only about three weeks prior to filing her chapter 7 case,[15] and that she obtained and recorded a reconveyance of the Property from her father only two days before commencing her bankruptcy case.

A claim of exemption under New Mexico law may be disallowed if transmutation of non-exempt property to exempt form would constitute a fraud on creditors. *Dona Ana Savings and Loan Ass'n v. Dofflemeyer,* 115 N.M. 590, 593, 855 P.2d 1054, 1057 (1993). After analyzing applicable law, this Court held in *In re Channon*, 424 B.R. 895, 900 (Bankr. D.N.M. 2010) that to determine whether an exemption available under New Mexico law should be denied on the basis of a debtor's conversion of non-exempt assets into exempt form the court must determine in each case whether a debtor has crossed the line of taking legitimate advantage of exemptions afforded by the state and is defrauding creditors under the actual fraud provisions of the Uniform Fraudulent Transfer Act ("UFTA") as adopted in New Mexico. In *Dofflemeyer*, the New Mexico Supreme Court held that the "Uniform Fraudulent Transfer Act and the exemption statutes should be construed together to obtain the purposes of both . . . ." 855 P.2d at 1057. The *Dofflemeyer* Court further held that to reconcile the two statutes requires an analysis of whether a

---

[14] Mr. McKinney has not relied upon 11 U.S.C. § 522(o). The Court therefore will not consider its applicability. Section 522(o) provides in part: For purposes of subsection (b)(3)(A) . . . (4) real or personal property that the debtor or a dependent of the debtor claims as a homestead; shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of."

[15] Mr. McKinney asserts Ms. Hamilton did not actually move into the Prince Property, and in the alternative asserts that if she did the homestead exemption should be denied because Ms. Hamilton acted in bad faith and to defraud creditors.

transmutation of non-exempt property into exempt form serves the underlying purpose of the exemption statutes and was not in furtherance of an intent to defraud creditors. *Id*. at 1058.

In determining whether a debtor took legitimate advantage of statutory exemptions by converting a non-exempt asset to exempt form or acted with intent to defraud creditors, a court should consider the purpose of the homestead exemption and the badges of fraud. "Badges of fraud represent . . . a list of circumstantial factors that a court may use to infer fraudulent intent." *In re Sholdan*, 217 F.3d 1006, 1009 (8th Cir. 2000). The UFTA sets forth a nonexclusive list of the badges of fraud. N.M.S.A. 1978, § 56-10-18. Factors relevant to whether a debtor took legitimate advantage of statutory exemptions by converting non-exempt assets to exempt form or acted with intent to defraud creditors include:

1) Whether the transmutation of non-exempt assets into exempt form was disclosed or concealed, and whether the debtor removed or concealed assets;
2) Whether the transmutation occurred shortly before or after a substantial debt was incurred or when the debtor was being sued or threatened with suit;
3) Whether the debtor already owned the exempt asset and used non-exempt assets to increase its value;
4) Whether the debtor borrowed funds to acquire or enhance the value of the exempt asset;
5) Whether and to what extent the debtor's acquisition of the exempt asset or enhancement of its value deviated from the debtor's historical conduct;
6) The value of the asset claimed as exempt, and whether and to what extent non-exempt assets remain available for distribution to creditors in the bankruptcy case;
7) Whether the debtor was insolvent or became insolvent shortly after the transmutation;
8) Whether the exemption is limited or unlimited;
9) Whether the bankruptcy case is a voluntary or involuntary case;
10) The proximity of the transmutation to the bankruptcy filing, and whether the transmutation was made in contemplation of a bankruptcy filing;
11) Whether the debtor acted in bad faith, such as by absconding or misrepresenting any aspect of the transactions resulting in the transmutation; and
12) Whether the debtor intended to use the exempt asset for the legislative purpose for the claimed exemption, and the extent to which allowance of the exemption will serve that legislative purpose.[16]

---

[16] *See In re Channon*, 424 B.R. at 902 (setting forth equivalent factors).

A court need not give equal weight to all of the factors; the relative weight given to individual factors depends upon the facts and circumstances of each case.[17]

This Court finds, after carefully considering all of the pertinent facts and weighting the relevant factors, that Ms. Hamilton by claiming the New Mexico homestead exemption is taking legitimate advantage of the statutory exemption available to her and has not acted with intent to defraud creditors.[18]

Although Ms. Hamilton conveyed the Prince Property to her father in response to Mr. McKinney obtaining a judgment against her, the Court is persuaded that Ms. Hamilton transferred the Property to her father in an effort to pay Mr. McKinney and not to shield the Property from his collection efforts. Mr. McKinney obtained a state court judgment against Ms. Hamilton on November 20, 2008 in the amount of $52,518.44. On December 4, 2008, he recorded a transcript of the judgment in Curry County, New Mexico, thereby obtaining a judicial lien against the Prince Property. On November 21, 2008, Ms. Hamilton executed a Quitclaim Deed transferring the Price Property to her father. The Quitclaim Deed was recorded on December 16, 2008. On June 16, 2009, a second Quitclaim Deed was recorded reconveying the Prince Property from Ms. Hamilton's father to Ms. Hamilton. Two days later, on June 18, 2009, Ms. Hamilton commenced her chapter 7 case.

Ms. Hamilton testified that after learning of the State Court's ruling that a judgment in favor of Mr. McKinney would be entered against her, she attempted to obtain a loan from Wells Fargo Bank secured by the Prince Property to pay off the debt but the loan was declined because of her credit. She testified that after talking to a banker she transferred to Prince Property to her

---

[17] *In re Soza*, 542 F.3d at 1066-67; Clark v. Wilmoth(In re Wilmoth), 397 B.R. 915, 920(8th Cir. BAP 2008); In re Moore, 177 B.R. 437, 442-43(Bankr.N.D.NY 1994); see also, *In re Sholdan*, 217 F.3d at 1009-10)(a court is not limited to statutory factors but free to consider other factors bearing on the issue of fraudulent intent).

[18] Factors 1, 9, 10 and 12 support allowance of the exemption. Factors 2, 6, 7, 8, 11 support disallowance of the exemption.

father to facilitate his using his better credit to obtain a loan secured by the Property to pay off the debt to Mr. McKinney, but his attempt to obtain the loan from Wells Fargo Bank likewise was unsuccessful. Ms. Hamilton delayed recording the quitclaim deed to her father for almost a month after it was executed, which permitted Mr. McKinney to obtain a judicial lien against the Property by recording a transcript of his judgment prior to recordation of the deed. As a result, Ms. Hamilton's father acquired title to the Property subject to the judicial lien. There was no legal impediment to Mr. McKinney seeking to foreclose the judicial lien against the Prince Property between the date of the transfer and Ms. Hamilton's commencement of her chapter 7 case.

Ms. Hamilton further testified that it did not occur to her at the time that she should ask her father to reconvey the Property to her. She considered herself the owner of the Property even after the transfer to her father. Ms. Hamilton testified that she had decided in June 2008 to move into the Prince Property, a year prior to commencement of her bankruptcy case. Ms. Hamilton was not questioned about what motivated her to move into the Prince Property in May 2009 or whether she moved in after consulting bankruptcy counsel. She testified that she obtained a reconveyance of the Property from her father before commencing her bankruptcy case on the advice of her bankruptcy attorney.

The Court finds credible Ms. Hamilton's testimony that she had intended for some time before moving into the Prince Property to make it her residence despite the proximity of her moving into the Prince Property and the commencement of her chapter 7 case. However, in the absence of any other credible explanation for her decision in May 2009 to actually move into the Property, the Court finds that Ms. Hamilton acted on her prior intention to establish residence at the Prince Property in order to protect the Property in her bankruptcy case by claiming a

-16-

homestead exemption.  This finding is not by itself sufficient to require disallowance of the homestead exemption.  A finding that a debtor was motivated in part in transmuting a non-exempt asset into exempt form by an intent to protect an asset from creditors does not by itself establish intent to defraud creditors; otherwise, the exemption always would be disallowed whenever the debtor converted a non-exempt asset into exempt form for the purpose of taking advantage of an exemption statute.

   The evidence does not support a finding of bad faith on the part of Ms. Hamilton in connection with the reconveyance of the Prince Property to her on the eve of bankruptcy even though allowance of the homestead exemption against the Prince Property will leave no assets in the bankruptcy estate for creditors and will mean no recovery by Mr. McKinney on his judicial lien.  So that she could claim a homestead exemption in her bankruptcy case, on the eve of bankruptcy and on advice of counsel, Ms. Hamilton obtained from her father and recorded a quitclaim deed so that title to the Prince Property would be in her name on the Petition Date.  Mr. McKinney has not proven that Ms. Hamilton's failure to obtain a reconveyance of the Property from her father sooner was motivated by an intent to hinder his collection efforts.  Ms. Hamilton testified that she considered the Prince Property to be hers.  There is no evidence that she gained any advantage by keeping title to the Property in her father's name subject to Mr. McKinney's judicial lien, that she did so for strategic reasons, or that any creditors were prejudiced thereby.  There is no evidence that Ms. Hamilton's father made any use of the Prince Property while he was vested with record title to the Property, or exercised any of the incidents of ownership in relation to the Property.  The reconveyance of the Prince Property to Ms. Hamilton by her father restored the status quo that existed before the transfer of the Property to him.

The purpose of the homestead exemption is to protect a debtor's home or preserve funds to provide shelter for a debtor and the debtor's dependents, despite insolvency, financial distress or calamitous circumstances.[19] Allowance of Ms. Hamilton's claim of homestead exemption serves this purpose. Ms. Hamilton did not have a home and did not rent a place to live prior to her moving into the Prince Property, having stayed with various family members. She moved into the Prince Property so she would have a her own place to live. Although living conditions at the Prince Property may be harsh, and its accoutrements austere, it is a refuge that provides Ms. Hamilton with basic shelter, privacy and a sense of security. The Court finds that protection of Ms. Hamilton's home from claims of creditors serves the purpose of New Mexico's homestead exemption statutes without contravening the purposes of the Uniform Fraudulent Transfer Act.

**B. Lien Avoidance Under 11 U.S.C. §522(f)**

The second issue before the Court is whether Mr. McKinney's judicial lien impairs Ms. Hamilton's homestead exemption. Ms. Hamilton seeks to avoid the lien under 11 USC§522(f) as an impairment to her homestead exemption.[20] In accordance with 11 U.S.C. § 522(f), a debtor is

---

[19] *Cf. Matter of Lombard*, 739 F.2d 499, 503 (10th Cir 1984)("The purpose of the Colorado homestead exemption is to secure to the householder a home for himself and his family, regardless of his financial condition"); *In re Polimino,* 345 B.R. 708, 711-712 (10th Cir. BAP 2006)(construing the Colorado homestead exemption statute, acknowledging that "it is also well-established that the purpose of the homestead exemption is to provide protection for a debtor's home for himself and his dependents and assure that a debtor and his family have a residence despite insolvency.")(citations omitted); *In re White*, 389 B.R. 693, 703 (9th Cir.BAP 2008)("the purpose of the [Arizona] homestead exemption is to preserve funds to provide shelter for the family."); *In re Wood*, 8 B.R. 882, 886 (D.S.D.1981)(The purpose of the homestead exemption is to "provid[e] the family a home in which it may have shelter from and a protection against the claims of creditors or its own improvidence and where it may live and be protected."); *Mannick v. Wakeland*, 138 N.M. 113, 122, 117 P.3d 919, 928 (Ct.App. 2004) ("The purpose of the homestead exemption is to prevent debtors from becoming destitute."); *Jackman v. Nance*, 109 Nev. 716, 718, 857 P.2d 7 (1993)( "the purpose of the [Nevada] homestead exemption is to preserve the family home despite financial distress, insolvency or calamitous circumstances, and to strengthen family security and stability for the benefit of the family, its individual members, and the community and state in which the family resides.").

[20] Ms. Hamilton filed two motions to avoid Mr. McKinney's judicial lien, the first one after she initially claimed the New Mexico homestead exemption and an amended motion after she amended her exemptions to claim the Prince Property exempt under 11 U.S.C. § 522(d)(5). *See* Docket Nos. 1, 8, 42, and 43. The amended motion seeks avoidance of the judicial lien on the ground that it impairs an exemption under 11 U.S.C. § 522(d)(5). Ms. Hamilton did not amend the motion further after amending her exemptions a second time to again claim the New Mexico homestead exemption. The parties have not noted this oversight. The Court will treat the pending motion to avoid lien as seeking to avoid the judicial lien on the ground that it impairs the New Mexico homestead exemption.

entitled to avoid the fixing of a judicial lien to the extent it impairs an exemption that the debtor is otherwise entitled. 11 U.S.C. § 522(f). Mr. McKinney's transcript of judgment constitutes a judicial lien subject to avoidance under 11 U.S.C. § 522(f).[21]

Whether a judicial lien impairs a debtor's exemption is determined in accordance with the formula found in 11 U.S.C. § 522(f)(2)(A). That section provides:

> [A] lien shall be considered to impair an exemption to the extent that the sum of—
> (i) the lien;
> (ii) all other liens on the Property; and
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the Property;
> exceeds the value that the debtor's interest in the Property would have in the absence of any liens.
>
> 11 U.S.C. § 522(f)(2)(A).

While the debtor initially listed the Prince Property on her Schedule A and provided a value of $100,000, she subsequently amended her Schedule A to reflect a Property value of $55,000 based on an appraisal dated September 15, 2009. The parties stipulated at the commencement of trial to the $55,000 appraised value. Mr. McKinney's transcript of judgment was recorded in the amount of $52,518.44. Ms. Hamilton's homestead exemption is $60,000.00. N.M.S.A. 1978, § 42-10-9. The formula found in 11 U.S.C. § 522(f)(2)(A) applied in this case yields the following:

| | |
|---|---|
| McKinney Judicial Lien: | $52,518.44 |
| Homestead Exemption (as if there were no liens) | $60,000.00 |
| TOTAL: | $112,518.44 |

Because the sum of the judicial lien on the Prince Property and the amount of the exemption that the Debtor could claim if there were no liens on the Property ($112,518.44) exceeds the value

---

[21] *See* 11 U.S.C. § 101(36) ("The term 'judicial lien' means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding."); *In re Gregory Rockhouse Ranch,* 380 B.R. 258, 262 (Bankr.D.N.M. 2007)(stating that "[t]ranscripts of judgment are the type of judicial lien that is avoidable under 11 U.S.C. § 522(f).")(citation omitted).

that Ms Hamilton's interest in the Property would have in the absence of any liens ($55,000), Mr. McKinney's transcript of judgment impairs Ms. Hamilton's homestead exemption and the judicial is to be avoided in its entirety. The Court therefore finds in accordance with 11 U.S.C. § 522(f) that the Motion to Avoid Lien of Roy McKinney should be granted.

This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law under Rule 7052, Fed.R.Bankr.P. An appropriate order will be entered.

*Robert H. Jacobvitz*
_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Entered on Docket Date: March 18, 2011

Copies to:
R Trey Arvizu, III
PO Box 1479
Las Cruces, NM 88004-1479
Attorney for Debtor

Tim J. O'Quinn
Tim J. O'Quinn, P.C.
PO Box 927
Tucumcari, NM 88401
Attorney for Roy McKinney